By the Court.
 

 Under the provisions of Section 5414-2, General Code, the shares of stockholders in an incorporated dealer in intangibles must be listed and assessed at their fair value. In the valuation of such shares it is necessary to determine the net value of accounts receivable, and to that end the amount of future losses must be computed and deducted from the total amount of accounts receivable.
 

 The taxpayer claims that the commissioner erred in his computation of the reserve for losses probably sustainable by the taxpayer, and that, the result and method employed for such ascertainment were unreasonable and unlawful. The primary question before this court, as before the Board of Tax Appeals, is whether the value of the taxpayer’s outstanding installment loans, as they stood on December 31, 1947, and as found by the commissioner, was unreasonable or unlawful, and the incidental question whether the method pursued by the commissioner in arriving at the reserve value was unreasonable or unlawful.
 

 In determining the value of taxpayer’s corporate
 
 *52
 
 shares the commissioner used a method of computation commonly known as the “percentage-to-volume” method. He started with the volume of business for each of the five years immediately preceding the tax year 1948, the volume of business being the amount of installment loans. He then determined the amount of bad debts charged off in each year and deducted therefrom the amount of recoveries in such year on previous charge-offs. The net charge-off for each year was divided by the year’s volume and the resultant percentage factors for the five years were averaged. To the average percentage factor of .44562 was added a percentage factor of .05 for “exigency allowance,” and, by the application of the final percentage factor of .94526 to the unpaid balances of installment loans, $150,681.81 was obtained as the amount of the bad-debt reserve.
 

 On the other hand, the taxpayer claims that what is known as the “percentage-to-unpaid balances” method should be used,
 
 i.
 
 <?., that its loss statistics should be calculated by relating losses to unpaid balances rather than volume; and that its bad-debt reserve should be 4.06% of its unpaid balances on December 31, 1947. The taxpayer claims that the volume percentage should not be applied to the year-end balance in arriving at a determination of loss reserve; that a much longer experience period than a five-year period should be used because a five-year period is not adequate; that prospective and unusually high losses in the future as well as actual losses in the past should be considered; that amounts of items as used and adopted by other operators in the small-loan field should be considered as proper indicia of reserve losses; and that it is proper to consider the usual requirements of those lending credit to the small-loan industry in determining loss reserve.
 

 Perhaps the greatest objection of the taxpayer to
 
 *53
 
 the method of determination used by the commissioner is that he used the experience of the past five-year period rather than that of a longer period or a suggested period of 20 years. A 20-year period experience would reach back to the economic depression years following the year 1929. The record discloses, for instance, that the percentage of charge-offs during the year to average unpaid balances outstanding during the year was for the five-year period 1943 to 1947, inclusive, 1.568%; for the ten-year period 1938 to 1947, inclusive, 1.757%; and for the sixteen-year period 1932 to 1947, inclusive, 2.660%. The record discloses also that the percentage of the amounts charged off by the taxpayer each year minus the amount of recoveries for the year as related to the total unpaid balance was, for the five years ending 1947, less than one-fifth of the percentages on the same subject for the years 1932, 1933 and 1934. These figures show the advantage to which the taxpayer claims it is entitled by including the experience of the long period back into the depression years of the decade following 1930.
 

 There is no evidence in the record to indicate that depression years are immediately ahead or that the experience of 1948 was unusual from an economic standpoint. From the consideration of the whole record it would appear that the taxpayer’s main complaint is against the method of computation of taxes adopted by the commissioner rather than against the results of such computation. There is no showing that the computation of the commissioner is out of line with the actual experience of the taxpayer for the year 1948.
 

 The Board of Tax Appeals, in the course of the statement of its decision, said:
 

 “It is not the province of this board to decide which is the more accurate or better method. It is for the
 
 *54
 
 Tax Commissioner to determine what formula is to be pursued. The duty of this board is to ascertain if the method employed by the Tax Commissioner is fair, just and reasonable and not contrary to law.
 

 “The reason for the creation of a reserve for bad debts is twofold; first, that a true and fair value of accounts receivable may be ascertained and, second, that an adequate cushion may be provided against anticipated losses in the next succeeding year. If the volume of business in a number of preceding years be known, and the losses represented by charge-offs in each such year’s business is also available, and the amount of recovery on bad accounts in each preceding year be certain, it can be mathematically discovered what the probable volume of business will be in the succeeding year and what will be the probable shrinkage in value of accounts receivable less recovered items. The resulting figures will, of course, not be accurate, but they will be approximately so. Appellant does not totally condemn this method, but asserts that the time covered is not sufficient to present a true average picture. It proposes that a twenty-year period is none too long. We believe that such a period is as objectionable as too short a period, like comparison with and averages obtained from a single preceding year. A five-year period ought to be adequate, for these years, just past are well known to be comparable with present business conditions. To go back ten to twenty years is to seek similarity in war and depression years which are not comparable. It is true that prospective change in business conditions might materially change the picture, for if conditions be good, losses will diminish and if it be bad, losses will increase. No proof of any such change has been produced. The board cannot assume from trade or employment reports or counsel’s opinion that business is entering a depression period
 
 *55
 
 or that the year 1948 will produce entirely different results from immediate preceding years. In fact, the evidence before this board concerning 1948 conditions discloses similarity, not dissimilarity, as will be hereinafter noted.
 

 “When net losses, consisting of charge-offs minus recoveries, are compared with reserves on receivables in their respective years it is seen that only in the years 1943 and 1945 did net losses exceed allowed reserves. The 1948 figures were available at the time of hearing and it appears that appellant was fairly dealt with because allowable reserves exceeded net losses by $51,203.86. What the taxpayer feared did not occur. In its computation appellant fails to anticipate recoveries and to make any allowance therefor on charge-offs. * * *
 

 “The board finds that the method pursued and reserve allowance made by the Tax Commissioner were not unreasonable, arbitrary and unjust in the manner complained of.”
 

 With these observations and with the decision of the Board of Tax Appeals in this case, this court concurs, and the decision of the Board of Tax Appeals is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Turner, JJ., concur.